U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 JAN 19 PM 3: 41

CLERK

BY CAN
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MARK DILLEY, )
)
    Plaintiff, )
)
v. ) Case No. 15-cv-00119
)
KIRSTJEN M. NIELSEN, )
Secretary of Homeland Security, )
)
    Defendant.[1] )

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**
(Doc. 35)

    Plaintiff Mark Dilley, an employee of the United States Citizenship and Immigration Service ("USCIS"), brings this employment discrimination action against Secretary of Homeland Security Kirstjen M. Nielsen (the "Defendant"). Plaintiff claims violations of the Rehabilitation Act of 1973, 29 U.S.C. § 791(b) ("the Rehabilitation Act") arising out of alleged discrimination on the basis of his Generalized Anxiety Disorder which he contends is a qualifying disability.

    In moving for summary judgment, Defendant argues that she is entitled to judgment as a matter of law because no reasonable fact-finder could conclude that Plaintiff was disabled according to the definition of "disability" contained in the Rehabilitation Act during the relevant time period. In addition, she asserts that even if Plaintiff could establish a prima facie case of discrimination, no reasonable fact-finder could conclude that USCIS discriminated against him on the basis of his alleged disability.

---

[1] Secretary Nielsen succeeded Secretary Kelly on December 6, 2017. Pursuant to Fed. R. Civ. P. 25(d), the Clerk of the Court shall revise the caption in this case to reflect this substituted party.

Defendant filed the pending motion on July 7, 2017. Thereafter, on August 7, 2017, Plaintiff sought and received an extension of time to file an opposition which he submitted on September 11, 2017.[2] On September 25, 2017, Defendant filed a reply whereupon the court took the matter under advisement.

Plaintiff is represented by Jasdeep S. Pannu, Esq. Defendant is represented by Assistant United States Attorney Benjamin Weathers-Lowin.

## I. Procedural Background.

Pursuant to Federal Rule of Civil Procedure 56(c) and Local Rule 56(a), Defendant's statement of undisputed material facts is supported by citation to admissible record evidence. Plaintiff, in contrast, did not file a statement of disputed facts as required by Federal Rule of Civil Procedure 56(e) and Local Rule 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial.") (internal quotation marks and footnote omitted). As a result, the facts set forth in Defendant's statement are generally deemed admitted. *See* Fed. R. Civ. P. 56(e)(2) (where the party opposing summary judgment does not dispute material facts asserted by the moving party, the court "may consider the fact[s] undisputed for purposes of the motion"). [3]

---

[2] Although Plaintiff submitted his opposition three days beyond the extended deadline for filing a responsive pleading, the court nonetheless considers it in the interests of justice. *See* Fed. R. Civ. P. 6(b) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time").

[3] Plaintiff submitted an affidavit authored by Danielle Spooner, who is apparently Plaintiff's co-worker. To the extent the affidavit offers admissible evidence, the court has considered it. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("while a court is not required to consider what the parties fail to point out in their Local Rule . . . statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.") (internal quotation marks omitted). The court, however, has not and cannot consider the evidence that is inadmissible even if contained in an affidavit. *See* Fed. R. Civ. P. 56(e) (requiring a statement of disputed facts to be supported by admissible evidence); *see also LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205-06 (2d Cir. 2005) ("The evidence considered on summary judgment must generally be admissible evidence.").

2

## II. The Undisputed Facts.

### A. Plaintiff's July 2012 Job Application and Non-Selection.

In 2012, Plaintiff was employed by USCIS, an agency of the Department of Homeland Security ("DHS"), in the position of Immigration Services Officer 2 in the Family Division of USCIS's Vermont Service Centers in St. Albans and Essex, Vermont. On July 25, 2012, Plaintiff applied for the first of three promotions, seeking permanent appointment to the position of Supervisory Immigration Services Officer ("SISO"). In connection with his application, Plaintiff submitted his resume and written responses to a questionnaire. Thereafter, a two-member hiring panel consisting of Associate Center Director Bradley J. Brouillete and Section Chief Jack D. Pelkey interviewed Plaintiff as well as twenty-six other candidates using standardized criteria developed in advance of the interviews and submitted to USCIS Employee Services prior to the identification of any candidates. The criteria ranked all applicants on the basis of their resume, an interview, and a five minute oral presentation on a work-related topic of the applicant's choice. The panel's review of resumes, which occurred first, was on a name-blind basis.

Ultimately, the hiring panel assigned Plaintiff's application a total score of "medium-low" on a five-point scale ranging from "low" to "high" based on the standardized criteria. They ranked his resume "medium," and his interview and presentation "medium-low." The panel identified the following factors that affected Plaintiff's scores:

> Plaintiff's work experience, as reflected by his resume, was not as directly relevant to the SISO position as that of certain other candidates; Plaintiff did not go into much depth on his presentation topic and it appeared as though he did not prepare for, or give thought to, his presentation; and Plaintiff's answers to their interview questions did not demonstrate leadership experience or other qualities required of the SISO position.

(Doc. 36 at 4, ¶ 11.) Based on the standardized criteria, the panel ranked sixteen applicants "high" or "medium-high," and recommended those candidates to Center Director Daniel M. Renaud, the selecting official for the position. The panel further notified Director Renaud that, if more selections were needed to fill additional vacancies,

3

they would be comfortable recommending the four candidates who received an overall score of "medium." The panel reported it was not comfortable recommending any of the seven candidates who received an overall score of "medium-low" or "low." Because Plaintiff as well as six other candidates were scored "medium-low," he was not among the candidates recommended to Director Renaud. In early September 2012, Director Renaud selected fourteen of the sixteen candidates the panel recommended.

### B. Plaintiff's September 2012 Job Application and Non-Selection.

On September 27, 2012, Plaintiff sought appointment to the temporary position of Immigration Services Officer 3 ("ISO-3"). The review process for this application was substantially the same as the process USCIS used to consider Plaintiff's July 2012 application. A hiring panel consisting of Section Chief Tanya Howrigan, SISO Mark Baltzell, and SISO Nancy Jansen evaluated Plaintiff and twenty-two other candidates for the position. Plaintiff submitted his resume and written answers to a brief questionnaire. After Plaintiff's interview, he was asked to write a timed essay on the topic of how he would acclimate to a new, challenging work environment. The essay was reviewed on a name-blind basis.

The panel assigned a score to each portion of each application using a three-point scale ranging from "low" to "high" and then used these scores to determine which candidates would be recommended to the selecting officer, Director Renaud. Prior to reviewing any candidates, the panel agreed that it would not recommend for selection any candidate who received a "low" score for two or more portions of the application.

Plaintiff received a score of "high" for his interview, but received scores of "low" for both his resume and his essay. According to the lead panel member "the first two paragraphs [of Plaintiff's essay] don't really relate to the question." (Doc. 37-7 at 67.) She noted further that Plaintiff's opening paragraphs "set sort of a negative tone throughout the essay." *Id.* at 68. In addition, she observed "grammatical errors" and "misspelled words" which negatively impacted her assessment of Plaintiff's candidacy for a role where "it's very important that we have somebody who can write well." *Id.* at 69. The lead panel member also found "formatting issues" in Plaintiff's resume that

4

"appear to not be attention to detail." *Id.* at 74. She noted that Plaintiff's generic listing of job duties failed to provide enough detail to "get some idea of what that experience is." *Id.* at 75.

Ultimately, the panel recommended the twelve highest ranked candidates for selection out of the twenty-three applicants. Because he received a score of "low" for both his essay and his resume, Plaintiff was not recommend for the position. Director Renaud hired six of the twelve recommended candidates in early December 2012.

### C.    Plaintiff's October 2012 Job Application and Non-Selection.

On October 11, 2012, Plaintiff applied for a temporary SISO position, the third and final application relevant to Plaintiff's claims. USCIS handled Plaintiff's application in substantially the same manner as his prior applications, requiring him to provide a resume and written responses to a questionnaire, as well as an essay on the topic of decision-making in the absence of complete information. A three-member hiring panel consisting of Associate Center Director Keith J. Canney, Section Chief Tom Pearl, and SISO Peggy Paradee evaluated Plaintiff's application, as well as the applications of nine other candidates, using standardized criteria submitted to USCIS Employee Services prior to the identification of any candidate. The essay portion of the application was reviewed on a name-blind basis.

The panel used the same three-point scale, ranging from "high" to "medium" to "low," to evaluate each part of the application. After its review of Plaintiff's application, the panel ranked him "low" in all three categories: resume, interview, and essay. The lead panel member noted "several grammatical errors [and] some spelling errors" in Plaintiff's resume, and explained that "one of the things that jumped out at me was there wasn't a significant amount of leadership experience in terms of supervisory experience." (Doc. 37-7 at 21-22.) He stated that he "didn't see a lot" of relevant experience on Plaintiff's resume. *Id.* In addition, the lead panel member found that Plaintiff's essay was "not on point with the question that was asked" and that "the communication of the message" Plaintiff attempted to convey was not "clear." *Id.* at 27-28.

5

Based on the standardized criteria, the panel recommended five of the ten applicants to Director Renaud. The panel did not recommend any of the candidates who were ranked "low" in all three categories, nor did they recommend the lone candidate who was ranked "low" in two out of the three categories. In early December 2012, Director Renaud hired all five of the recommended candidates. Because Plaintiff received "low" scores in all three categories, he was not selected.

### D. Plaintiff's Allegations of Discrimination.

#### 1. Plaintiff's Informal Discrimination Complaint.

On October 17, 2012, Plaintiff contacted USCIS's Office of Equal Opportunity and Inclusion ("EEO Office"), alleging that he was not selected for the July 2012 permanent SISO position because of his Generalized Anxiety Disorder. Plaintiff's October allegations were set forth in an informal complaint handled by a contract EEO Office counselor. On November 5, 2012, the contract counselor interviewed Plaintiff by telephone.

At the time of his telephone interview, Plaintiff was unaware of his non-selection for the temporary ISO-3 and SISO positions. He advised that he had begun applying for promotions in 2010 and had been unsuccessful in obtaining one. After his denial for the permanent SISO job in September 2012, Plaintiff stated that he began to suspect that his non-selections were the result of discrimination. The contract counselor reported that:

> [Plaintiff] feels that management is discriminating against him by using his disability as a factor in their decision not to select him for promotion. [Plaintiff] states that management insinuated this concern when during the interview on August 30, 2012 [for the permanent SISO position], Mr. Pelkey asked [Plaintiff] why he left a prior position working on the border. It was [as] if Mr. Pelkey was fishing when he asked him that question.

(Doc. 37-12 at 6.) The contract counselor also noted in her report that Plaintiff was concerned about bias resulting from a prior disagreement with a member of the July 2012 selection panel. She recorded that Plaintiff had reached out to his supervisors who encouraged him to keep applying.

6

After interviewing Plaintiff, the contract counselor interviewed the selecting official, Director Renaud, as well as the panel member with whom Plaintiff indicated he had a disagreement. According to the contract counselor's report, both officials disclaimed any knowledge of Plaintiff's alleged disability and stated that, had they know about it, Plaintiff's Generalized Anxiety Disorder would not have been a selection factor. The panel member Plaintiff believed may have been biased against him acknowledged a prior discussion with Plaintiff, but denied that he harbored any ill-will toward Plaintiff or that anything other than the approved selection factors impacted his decision.

During her interview with Director Renaud, the contract counselor discussed Plaintiff's desired resolution: mandatory sensitivity training for management staff on the topic of anxiety disorders, a promotion to SISO or ISO-3, and transfer to another office. Plaintiff's demands were not met and on November 29, 2012, the EEO Office issued Plaintiff notice of his right to file a formal complaint via certified mail.

### 2. Plaintiff's Formal Discrimination Complaint and EEOC Hearing.

On December 11, 2012, Plaintiff filed his formal discrimination complaint with USCIS, alleging a pattern of discriminatory non-selection dating from September 2010 through his July 2012 application. The EEO Office requested clarification by email of the precise vacancy listings and dates of the non-selections Plaintiff contended were the result of discrimination, as well as Plaintiff's justification for filing a complaint for those non-selections occurring more than 45 days prior to his complaint's filing.[4] In his reply, Plaintiff indicated he could not remember the vacancy postings or dates for earlier non-selections, but provided information for his non-selections for the September and October 2012 openings. The EEO Office treated Plaintiff's emailed response as a constructive amendment to his formal complaint.

---

[4] EEOC regulations require complainants to submit their formal claims within forty-five days of the triggering event, unless special circumstances excuse the delay. See 29 C.F.R. § 1614.105(a).

7

On December 28, 2012, the EEO Office partially accepted Plaintiff's complaint and opened an investigation into Plaintiff's non-selections for the three 2012 applications. Plaintiff's contention that he was subject to a discriminatory pattern of non-selection pre-dating the 2012 applications was denied as time barred pursuant to Equal Employment Opportunity Commission ("EEOC") regulations. An EEO Office contract investigator was assigned to the case and conducted an investigation into Plaintiff's discrimination claim which ultimately produced a 763 page Report of Investigation ("ROI"), which was submitted to the EEO Office on April 1, 2013.

The contract investigator requested medical evidence supporting Plaintiff's disability claim, and inquired as to the limitations his alleged disability imposed on Plaintiff's major life activities. In response to the contract investigator's request, Plaintiff produced a note signed by Robert Balaban, M.D. who is board certified in adult psychiatry. The note, which was not under oath, states in its entirety that "[Plaintiff] has had a long history of Generalized Anxiety Disorder and has requested that I notify you of his diagnosis. He has tried a couple of medications for his anxiety." (Doc. 37-34 at 2.)

Plaintiff, Director Renaud, members of the July 2012 hiring panel, and Plaintiff's first and second line supervisors all provided sworn testimony for the contract investigator's consideration. In Plaintiff's sworn testimony, he indicated that his disability "does not interfere with my major life activities while it is controlled. It has never interfered with my ability to perform the essential functions of my current position or any other position I have ever held." (Doc. 37-2 at 4.)

When asked whether Director Renaud or the selecting panels knew of his disability, Plaintiff stated that, after his non-selection for the SISO position in September 2012, his direct supervisor Tracy Zeppi told him that "upper management was aware of my anxiety and they were reluctant to give me a [senior position] because they were unsure of how I would act in those positions." *Id.* Plaintiff went on to say that he did not know who Ms. Zeppi "meant by upper management." Later in his testimony, Plaintiff indicated that he "assume[d]" Director Renaud knew about his disability based on Ms.

8

Zeppi's comments. *Id.* at 7.[5] In sworn testimony before the contract investigator and at a later hearing before an EEOC administrative judge, Ms. Zeppi denied ever telling Plaintiff "that upper management was reluctant to give him a GS-13 position." (Doc. 37-38 at 4.) She also denied telling him that "upper management was aware of his having anxiety." *Id.* She did state that she was aware Plaintiff struggled with anxiety and that he was seeing a therapist, but that she "never viewed him as having a diagnosed disability[.]" *Id.* at 5.[6] When asked by an Associate Center Director for her evaluation of Plaintiff's candidacy for the September SISO position, Ms. Zeppi recommended that Plaintiff be considered. This recommendation was Ms. Zeppi's sole involvement in the hiring process for the three positions at issue.

Similarly, Director Renaud testified under oath that he "learned of [Plaintiff's] disability when contacted about this investigation and probably before that when I saw his EEO complaint on December 31, 2012[.]" (Doc. 37-9 at 3.) The members of the July 2012 selecting panel similarly testified under oath that they were unaware of Plaintiff's alleged disability prior to the investigation.

On April 5, 2013, after USCIS received the ROI, it notified Plaintiff of his right to request a hearing before an EEOC administrative judge, which he elected on April 12, 2013. On January 23, 2015, the EEOC administrative judge entered a decision in favor of USCIS. The administrative judge concluded that Plaintiff:

> failed to prove disparate treatment based on his disability. Not only has he failed to establish that the recommending or selection officials were aware of his disability or regarded him as disabled at the time of the selections, but [USCIS] has articulated legitimate non-discriminatory reasons for its

---

[5] In his response to Defendant's interrogatories, Plaintiff avers that he memorialized his conversation with Ms. Zeppi in a handwritten note, however, that note is not part of the record before the court.

[6] Plaintiff's own statements regarding Ms. Zeppi's remarks appear inconsistent. For example, the EEO Office contract counselor's official report of counseling states that Plaintiff told the contract counselor *he* told Ms. Zeppi that his Generalized Anxiety Disorder was a factor in his non-selections, and that Ms. Zeppi replied that she did *not* believe Plaintiff's Generalized Anxiety Disorder would have been a factor in the panels' decisions. *See* Doc. 37-12 at 6.

actions and [Plaintiff] has failed to prove the reasons were but pretext for discrimination.

(Doc. 1-1 at 13.) On March 9, 2015, USCIS issued a final order implementing the administrative judge's decision.

On June 8, 2015, Plaintiff filed this action. In response to Defendant's interrogatories, Plaintiff acknowledged under oath that his "condition did not limit me prior to the denial of the positions, except perhaps socially to a limited extent." (Doc. 37-32 at 6.) Plaintiff produced a note signed by Justin Dragos, M.A. which is unsworn and which states as follows:

> [Plaintiff] is a patient of mine at the Center for Anxiety Disorders in Burlington, Vermont. Per his request, I am writing this letter as documentation of his current diagnosis of (300.02) Generalized Anxiety Disorder as defined in the Diagnostic and Statistical Manual of Mental Disorder[s] version V (2013). [Plaintiff] meets all of the diagnostic criteria for this disorder.

(Doc. 37-35 at 5.)

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). The court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

10

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

In a discrimination case, courts "are obliged 'carefully [to] distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture.'" *Woodman*, 411 F.3d at 75 (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999)).

> [The Second Circuit] has repeatedly emphasized the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent. Where an employer acted with discriminatory intent, direct evidence of that intent will only rarely be available, so affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks, citations, and alterations omitted). Nonetheless, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases" because "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than

11

to . . . other areas of litigation." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (internal quotation marks omitted); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("[T]rial courts should not treat discrimination [cases] differently from other ultimate questions of fact.") (internal quotation marks omitted).

B.  **Claims Under § 501 of the Rehabilitation Act of 1973.**

In his Complaint, Plaintiff alleges a cause of action arising under 29 C.F.R. § 1614.407 which provides that "a complainant who has filed an individual complaint . . . is authorized under [the Rehabilitation Act] to file a civil action in an appropriate United States District Court[.]" 29 C.F.R. § 1614.407. Title V of the Rehabilitation Act is codified at 29 U.S.C. §§ 791-94. Because Plaintiff is a federal employee alleging disability discrimination, his claims arise under § 791, which "provides the sole remedy" for federal employee discrimination claims in the Second Circuit. *Rivera v. Heyman*, 157 F.3d 101, 104 (2d Cir. 1998). Under § 791, "[t]he standards used to determine whether this section has been violated . . . shall be the standards applied under title I of the Americans with Disabilities Act of 1990 ["ADA"] (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510 of the [ADA] (42 U.S.C. 12201-12204 and 12210), as such sections relate to employment." 29 U.S.C. § 791(f).

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, [] (1973)." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). Because § 791 cases must be evaluated under ADA standards, the *McDonnell Douglas* framework is used to evaluate Plaintiff's claims. *See Dean v. Univ. of Buffalo Sch. of Med. & Bio. Scis.*, 804 F.3d 178, 187 (2d Cir. 2015) ("As the standards for actions under . . . the ADA and the Rehabilitation Act are generally equivalent, we analyze such claims together"); *see also Atencio v. U.S. Postal Serv.*, 198 F. Supp. 3d 340, 355 (S.D.N.Y. 2016) (applying *McDonnell Douglas* framework to § 791 claim).

Under *McDonnell Douglas*, "a plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [decision]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). "[A] reason cannot be proved to be a pretext for *discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

### C. Whether Plaintiff Can Establish a Prima Facie Case of Discrimination.

To establish a prima facie case of discrimination, "a plaintiff must show (1) that he has a disability for purposes of the Rehabilitation Act, (2) that he is otherwise qualified for the benefit that has been denied, (3) that he has been denied the benefits solely by reason of his disability[.]" *Flight v. Gloeckler*, 68 F.3d 61, 63 (2d Cir. 1995) (internal quotation marks omitted).[7] "Establishment of the prima facie case in effect creates a

---

[7] The Second Circuit has not squarely addressed the standard for a prima facie case of discrimination on the basis of non-selection for promotion under 28 U.S.C. § 791. It has, however, addressed the standard for discrimination based on wrongful discharge under 29 U.S.C. § 794, the Rehabilitation Act's analogous provision for employees of private entities that receive federal funds. *See, e.g., Flight v. Gloeckler*, 68 F.3d 61, 63 (2d Cir. 1995) (plaintiffs must show denial of benefits "solely by reason of . . . disability[.]").

Sections 791 and 794 differ in one significant respect. Section 794 states that "No otherwise qualified individual with a disability . . . shall, *solely by reason of her or his disability*" be denied benefits or excluded from federally funded activities. 29 U.S.C. § 794(a) (emphasis supplied). Section 791(b), in contrast, does not contain the "solely by reason of her or his disability" language. The United States Court of Appeals for the Fifth Circuit has concluded that mixed-motive suits are permissible under § 791. *See Pinkerton v. Spellings*, 529 F.3d 513, 518 (5th Cir. 2008) (holding that "the proper causation standard under [§ 791] is a motivating factor test.") (internal quotation marks omitted).

13

presumption that the employer unlawfully discriminated against the employee." *Hicks*, 509 U.S. at 506 (internal quotation marks omitted).

For the purposes of employment discrimination, the Rehabilitation Act adopts the ADA's definition of disability. *See* 29 U.S.C. § 705(20)(B). The ADA provides that: "[t]he term 'disability' means, with respect to an individual (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1).

To establish a disability under subparagraph (A) of section 12102, Plaintiff must satisfy a two-pronged inquiry: "It must first be determined whether a plaintiff has a physical or mental impairment. If so, it must then be decided whether such impairment substantially limits one or more of that person's major life activities." *Heilweil v. Mt. Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994).

An impairment can be "[a]ny mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). Plaintiff's sworn statement that he has been diagnosed with Generalized Anxiety Disorder, his physicians' notes, and his immediate supervisor's admission that "we knew things made him more anxious than they would cause others to be anxious" (Doc. 37-38 at 5) are collectively sufficient to at least render it a jury question whether Plaintiff

---

District courts in the Second Circuit have demonstrated a lack of uniformity on this issue. *See, e.g., Nadel v. Shinseki*, 57 F. Supp. 3d 288, 295 (S.D.N.Y. 2014) (stating cause of action for federal employees arises under § 791 but applying "sole" cause standard from § 794 claims); *Hodges v. Att'y Gen. of U.S.*, 976 F. Supp. 2d 480, 490, 492 (S.D.N.Y. 2013) (holding that § 791 is a federal employee's sole recourse but applying general ADA standard for prima facie showing of discrimination); *Frasure v. Principi*, 367 F. Supp. 2d 245, 259 (D. Conn. 2005) (stating that "[a] plaintiff need not demonstrate that his or her disability was the sole cause of the employer's actions, but only that the disability played a substantial role that made a difference to his or her employer's actions" in a case brought by a federal employee) (internal quotation marks omitted). Because the Second Circuit has articulated the standard under an analogous provision, and absent any clear weight of authority to the contrary, the court will apply the standard announced in *Gloeckler*. *See Gloeckler*, 68 F.3d at 63.

14

suffers from an impairment because "[a]n impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."
29 C.F.R. § 1630.2(j)(1)(ii). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* This "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).

The Second Circuit has held that the ADA does not "require medical evidence to establish a genuine dispute of material fact regarding the impairment of a major life activity at the summary judgment stage[,]" though it has made clear that "conclusory declarations are insufficient[.]" *Rodriguez*, 788 F.3d at 43-44. "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures[,]" such as medication or "learned behavioral or adaptive neurological modifications." 42 U.S.C. § 12102.[8]

In his answer to Defendant's request that Plaintiff "identify each . . . major life activity or major bodily function [that his mental disability restricts,]" (Doc. 37-33 at 8), Plaintiff replied that "[m]y condition did not limit me prior to the denial of the position, *except perhaps socially to a limited extent.*" (Doc. 37-32 at 7) (emphasis supplied). Similarly, in deposition testimony before the EEO Office contract investigator, Plaintiff stated that "with medication and meditation and exercise I can function normally all of the time but *sometimes I may feel panic.* The only time I cannot control my symptoms is if I pass out which has happened only once, last summer." (Doc. 37-2 at 4) (emphasis supplied). Plaintiff also stated that his anxiety "does not interfere with my major life

---

[8] While the existence of a "disability" was previously analyzed in light of the ameliorative effects of treatment, that is no longer the case under the Americans with Disabilities Act Amendments Act of 2008. See P. L. 110-325, 122 Stat. 3553 (stating Congress' view that "the holdings of the Supreme Court in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and its companion cases have narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect[.]"). The ADA, as amended in 2008, therefore covers a wider range of potential disabilities. *See, e.g., B.C. v. Mt. Vernon Sch. Dist.*, 837 F.3d 152, 161, n.10 (2d Cir. 2016).

activities while it is controlled." *Id.* "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 29 C.F.R. § 1630.2(j)(vii).

Although a close question, viewed in the light most favorable to Plaintiff, a rational fact-finder could conclude that Plaintiff's anxiety would substantially limit a major life activity were it not for his medication, meditation, and exercise regime. A rational jury therefore could also conclude that he has a qualifying "disability" for the purposes of a prima facie case of discrimination under the Rehabilitation Act.

The second prong of a prima facie case requires that Plaintiff establish he was "otherwise qualified" for the positions in question. As the EEOC administrative judge indicated in her written opinion, Plaintiff was found "qualified" for each position at issue based on his experience and education. (Doc. 1-1 at 4.) Plaintiff has thus satisfied the second prong of his prima facie case. *See de la Cruz v. N.Y. City Human Res. Admin. Dep. of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996) ("[Plaintiff] need not demonstrate that his performance was flawless or superior. Rather, he need only demonstrate that he possesses the basic skills necessary for performance of [the] job") (internal quotation marks omitted).

With respect to the third prong, Plaintiff fails to establish that he was denied a promotion "solely by reason" of his disability, *Gloeckler*, 68 F.3d at 63, or even by the "motivating factor" or "substantial factor" standards. Plaintiff has pointed to no evidence that would allow a rational jury to conclude that his non-selection was motivated by anything other than a legitimate analysis of his qualifications and a comparison of those qualifications with those of other applicants, primarily on a name-blind basis. He has also failed to establish that any decision-maker was aware of his disability and factored it into his or her decision-making. *See Francis v. City of Meriden*, 129 F.3d 281, 285 (2d Cir. 1997) ("plaintiff must allege that the employer believed, however erroneously, that the plaintiff suffered from an impairment that, if it truly existed, would be covered under the statutes *and that the employer discriminated against the plaintiff on that basis*.") (internal quotation marks omitted) (emphasis supplied). As a result, Plaintiff fails to

16

establish a prima facie case of discrimination under the Rehabilitation Act. On that basis alone, Defendant is entitled to summary judgment in her favor. *See Celotex Corp.*, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case").

### D. Whether the Undisputed Facts Demonstrate a Non-discriminatory Reason for Defendant's Non-Selections.

Assuming *arguendo* that Plaintiff could establish a prima facie case of discrimination under the Rehabilitation Act, Defendant would still be entitled to judgment as a matter of law because she has provided uncontroverted evidence of a non-discriminatory basis for Plaintiff's non-selections that no rational jury could conclude was a "pretext" for discrimination. *Hicks*, 509 U.S. at 515.

If a defendant presents, "through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action[,]" *Hicks*, 509 U.S. at 507, (emphasis in original) (internal quotation marks omitted), "[t]he presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture." *Id.* at 510-11. The plaintiff "retains [the] ultimate burden of persuading the [trier of fact] that [he] has been the victim of intentional discrimination." *Id.* at 508 (alterations in original) (internal quotation marks omitted). "[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515 (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)) (emphasis in original).

Defendant proffers ample evidence that all three of the recommending panels reviewed significant portions of each applicant's submission on a name-blind basis, without reference to any identifying information. The recommending panels also used pre-determined objective criteria for candidate evaluation where possible and appropriate, evaluated each candidate on the same scale, and submitted their selection criteria for independent review and approval from USCIS's Employee Services prior to the

17

commencement of the hiring process. USCIS utilized two levels of review, with Director Renaud serving as the final appointing authority for each vacancy at issue.

The recommending panel members provided non-discriminatory justifications for their evaluations of Plaintiff's applications which Plaintiff has not disputed. Director Renaud, the ultimate appointing authority for each contested vacancy, had no knowledge of Plaintiff's disability prior to the initiation of Plaintiff's EEO Office complaint. In each instance, he followed the recommendations of the panels who evaluated the candidates.

Plaintiff, in his affidavit provided to EEOC investigators, states that he "assumed" his supervisor was referring to Director Renaud when she told him upper management was aware of his anxiety and that his disability was impacting hiring decisions but offers no evidence to support this speculation. His supervisor, in turn, states under oath that the conversation never occurred. Ms. Zeppi was not a member of any of the panels that evaluated Plaintiff's applications. Her only role was to suggest that Plaintiff be considered for one of the three positions. At best, Plaintiff creates a disputed issue of fact regarding whether his supervisor made a vague statement regarding unidentified "upper management's" awareness of his disability. Without more, this cannot establish pretext for discrimination. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) ("The plaintiff must 'produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action].'") (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996) (internal quotation marks omitted)). "To get to the jury, '[i]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination.'" *Id.* (quoting *Hicks*, 509 U.S. at 519).

Because Plaintiff fails to proffer evidence that USCIS's "legitimate reasons" for Plaintiff's non-selections were "false, *and* that discrimination was the real reason[,]" *Hicks*, 509 U.S. at 515, he cannot sustain his ultimate burden to establish that his non-selections were the result of intentional discrimination. *See Weinstock*, 224 F.3d at 42.

Defendant is therefore entitled to judgment as a matter of law in her favor. *See* Fed. R. Civ. P. 56(c).

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Doc. 35) is GRANTED and Plaintiff's claims are DISMISSED.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 19th day of January, 2018.

Christina Reiss, District Judge
United States District Court